Mr. Ritchie, whenever you're ready. Good morning. May it please the Court, my name is Ronald D. Ritchie. I'm here on behalf of the Petitioner Robert Fosso. As the Court has determined, the primary issue before the Court today is whether substantial evidence supports the agency's finding that Petitioner Fosso failed to qualify for any relief at all. We believe the answer to that question is a resounding no. In fact, the Board and the immigration judge below failed to consider a substantial part of the evidence, which involves independent, cooperative, and credible evidence, showing inter alia that the Petitioner is likely to again be arrested, detained, and tortured due to his activities and support on behalf of the LGBT community and their rights. This unrefuted and independent, credible evidence consists of objective, reliable State Department country reports, which this Court has found in Guanahasseh and other cases are the most important evidence in considering what country conditions are and whether the likelihood of an applicant being persecuted either in the past or in the future. There were also significant news articles, which were again unrefuted and independent. There were statements from six different witnesses, including a prominent political activist and former Cameroon University professor. These are all found in Exhibit 6, which demonstrate that there was independent and credible evidence demonstrating that Petitioner had suffered past persecution and had a well-founded fear of future persecution. The Petitioner himself wasn't consistently credible, was he? At his initial credible fear review, he didn't mention any government abuse, and the arrests and beatings he says he suffered seemed to increase each time he told the story. What are we to do with that given the substantial deference owed to the Court below? We concede, Your Honor, that there were inconsistencies in the Respondent's account relating to solely issues of arrest and conditions of detention. That's a pretty big one, isn't it? That is, Your Honor, but that's only a small part of all the evidence that was submitted on the record. The immigration court and the agency is required to look at all the evidence, not just pick out a certain part and focus on that and make a decision solely on that bit of evidence. If there had been all the evidence in the record, then clearly the judge would have been correct in his decision. So what's the other evidence in the record? The nephew's testimony, as I understand it, was rejected because it was based not on firsthand knowledge. So what are we left with? Well, Your Honor, we're left with a lot of evidence. This is objective evidence and some subjective. We have the reliable State Department reports. We have both the 2012 U.S. State Department country report and the 2013 country report. They don't talk about what happened, allegedly happened to this petitioner, though. They do not, Your Honor, but they do show us what the environment is in Cameroon. It's one of the fifth, according to the professor, Cameroon University professor's statement, Cameroon is one of the fifth worst countries in the world when it comes to human rights violations. Their president, dictator, has been in power since 1982. They have a history of gross and flagrant human rights violations, including intolerance towards gays, LGBT community. In fact, they have their law still on the books and it's vigorously enforced by the police to go after any individual who supports or promotes the rights of gays. And so that is a backdrop that I think we... And I don't mean to diminish that, but it certainly suggests a repressive regime, but the test is whether or not those practices would lead one to conclude that your client would be subject to torture or persecution any more than anybody else would in that unfortunate circumstance. And what's the evidence of that? Well, again, the professor in the statement says that the petitioner is one of the very few gay rights activists in Cameroon. And if he's one of the few and they tend to be targeted, that would imply that he's likely to be persecuted. But in addition to that, and this is contrary to the judge's decision, the judge and the board basically agreed with the judge that there was no documents, no statements from any of the witnesses confirming about any arrest or any warrants of arrest or of any persecution of the petitioner. And that's incorrect. At least three of the statements, a statement from the petitioner's spouse, from a neighbor, and from the family lawyer in Cameroon all corroborated his arrest. Many others confirmed the warrants for arrest and his torture and the burning down of his business. But all, and this is maybe most importantly, all independently corroborated that the petitioner started an LGBT rights organization, it's called Rights for All in English, with his wife. He organized meetings and public rallies. In fact, over a thousand people appeared at his last meeting rally and he disseminated information which was contrary to the regime's political agenda. So we have those statements. We also have... So was his wife arrested or not arrested in Cameroon for her activities? It's not, it appears that she may not have been, but... I mean, because that's another inconsistency in the record. Because he testified that his wife was arrested, but her affidavit said she was not. He testified she was not arrested and she said she was in an affidavit. So the two of them are inconsistent. I believe, and I may be wrong, Your Honor, but you have to look exactly at that, at the affidavit. But I believe it was worded such that it could be implied... I thought that she stated that they were subject to arrest. And again, she's not believing the plural, so... And also you have to kind of look at the backdrop. They're in an organization where others are being arrested in their organization. And, of course, people outside of their organization in the LGBT community. Also, the judge interestingly found that the petitioner's nephew, who testified that the petitioner was involved in the gay rights movement and had been arrested twice in Cameroon, the judge found him to be reliable. The affidavit says, we were several times arrested, detained, and tortured. And he testified that she wasn't arrested. Thank you, Your Honor. Doesn't the applicant have to prove his subjective fear? And as to that issue, hidden credibility, the paramount issue? Definitely, in the asylum context, credibility is important. But as this court has found in the Camara holding, that's not the end of the analysis. Okay? And I believe that this case is on all fours with the decision and holding in Camara. In that case, the court found that there were inconsistencies. And the judge in that case, the immigration judge, had found that the petitioner was not credible and made an adverse credibility finding. But the court found, this court found, that there was independent, reliable evidence, including State Department reports, among others, to demonstrate that the petitioner did warrant relief. And, Your Honor, also in that regards, when it relates to the standard and the relief of protection under the torture convention, the subjective view of the petitioner is not in consideration. What evidence did he apply, did he supply as to any, what, any objective evidence did he supply as to past persecution? There was one, the testimony of his nephew, who the judge found reliable. The nephew testified that the respondent, or excuse me, that the petitioner had been arrested twice in Cameroon and had been involved in the gay rights movement. The statements, as I mentioned, from the six other witnesses, some, at least three, as I mentioned, confirmed, corroborated that the petitioner had been arrested. That is arguably objective documentation and evidence. We also have, it's also important to keep in mind that the judge did not find the petitioner's testimony and account about his involvement in the gay rights movement as being not believable. The judge did not find it. The judge only found that his testimony regarding arrest and detention was not reliable or was inconsistent. So we have, we do have evidence and, you know, we also have, like I mentioned, the evidence and the statement from the Cameroon University professor, which wherein that professor details about a lot of the background problems in Cameroon because of its horrendous human rights record, just in general and relating to the LGBT community. The professor also states his opinion that he believes that the petitioner would suffer torture and persecution if he returns to Cameroon. So even if we accept, and as I stated, we can see that there were inconsistencies and that even if you assume, arguendo, that the petitioner's testimony relating to the arrest and relating to whether he was tortured or not during any detention, even if you find that that's not reliable, we have significant, substantial, unrefuted, independent evidence showing that the petitioner has suffered past persecution and an alternative has a well-founded fear of future persecution upon returning to this country of Cameroon. And again, the immigration judge was mistaken about much of the evidence, at least the evidence that the judge considered. Our position is that the judge only considered a very small part of the evidence in the case. And as stated, the judge said that none of the statements of the sick witnesses mentioned that he had been arrested, and that was not correct, and there were other parts that the judge totally ignored. And the board basically followed suit with the judge and accepted the judge's conclusions. Just another issue is it's not, it appears that the judge, the immigration judge, did not allow the petitioner to explain any perceived inconsistencies in all of the situations. A couple of them, yes, but the judge did not in all of the situations, which we believe also was an error. What do you mean by that, Mr. Ritchie? You mean he cut him off or? He just didn't follow up and ask, okay. Is that the lawyer's job? Well, the law seems to imply that a judge does have, if a applicant, respondent in that case, petitioner here, appears to have testified in an inconsistent manner that the person should be given an opportunity to explain. So are you saying that he cut him off? In some ways, yes, because the judge was asking, constantly prodding the petitioner's attorney to move on, to go on to the next area. That never happens in court. By the way, Mr. Ritchie, your red light's on. Yes, I'm ready to sit down. Thank you. May I please record? Our view is that the fundamental issue in this case is that Mr. Faso did not testify credibly about the very basis of his claim, which is the past persecution that he allegedly suffered. And as we detail in our brief, Mr. Faso's story changed over time and it got worse and worse. So when he was first questioned about what happened to him in Cameroon, he talked about bad things that were done by members of the public because of his support for gay rights. In his declaration, all of a sudden, that changed to the government did things to me. And it was in his declaration he said, I was arrested twice, I was detained twice, and I was beaten the first time. And he says explicitly in his declaration, I was not beaten the second time. Then he gets before the immigration judge and he testifies that I was arrested twice, I was detained twice, and I was beaten twice. So the story is evolving over time in a way that is simply not credible. So does the government dispute that he was arrested? Do you just not know whether or not he was arrested at all? We don't know if any of this happened. The record does not support what actually happened. It's impossible to say whether some of this happened, all of it happened, or none of it happened. Does the record support that Mr. Faso was a gay rights activist? Well, there's certainly support in the record for that position. Now, whether it's true or not, we can't say, but certainly there is support in the record for that basic proposition. Well, if that's true, and even assuming that there's an adverse credibility determination with respect to the cat claim, wouldn't we still be able to assess whether the nature of this repressive regime is such that Mr. Faso would be more likely than not to be tortured or for turned? Well, the important thing to remember is that this is a substantial evidence review. So one could look at this record, if it was a de novo review, and say, yeah, he probably was a gay rights activist, probably something bad happened to him, it's possible something more bad would happen to him when he, if he's returned. But that's not the question. Does the agency, does substantial evidence support their determination that there's not enough here to grant him relief? And the answer to that question is yes. When this individual had the opportunity four different times to tell his story, and the story changed, and changed in a way that makes it substantial evidence supports the concept that he's making it all up. Now, again, whether in fact he is or isn't is not the question. There's enough here based on his evolving story of the harm that he suffered to find that the agency, that there is support for their view, that they simply can't accept his story. Did the IJ apply the appropriate standard in this case? I'm sorry? Did the IJ use the appropriate standard? Yes, yes, the IJ evaluated, the IJ said very specifically he reviewed all of the evidence before him, reviewed the documents, listened to the testimony. And the standard, and the IJ did not find him credible. And so that is, the board then evaluated that determination, again, looked at all of the evidence, and found that there was no clear error in the IJ's determination. And it's important to note that the IJ's adverse credibility determination was not based on any sort of witness demeanor type of determination. It was not based on his jib or something of that nature. The IJ said there are these specific contradictions in his testimony, and that is certain, and the board found no clear error in that, and agreed, looked at specific examples that the IJ pointed out, and agreed that there's just not enough here to find that this individual is entitled to relief. And it's interesting to note that there are other inconsistencies in the record, one of which is that in one of his iterations, specifically Mr. Fossil's interview with the asylum officer, he was asked at each, at each stage, why did you do this? You say that you're not gay, yet you say you're taking your life in your hands by, you know, being an activist for gay rights. Why have you done this? Three of those times he said, well, my cousin is gay, and so I want to support him. In his interview before the asylum officer, he said, my brother is gay. So, again, there's a lot of things here that just don't add up to the point where the agency, there's substantial evidence to support their finding that he's not credible. In terms of corroborative evidence, so counsel for Mr. Fossil talked about corroborative evidence and State Department reports showing quite clearly that Cameroon does not treat gay people well. We don't dispute that. That much is clear. Cameroon is not somewhere you want to be if you're gay. But that does not mean that Mr. Fossil has been persecuted or will be persecuted because there's substantial evidence to support the idea that he may not be a gay activist, he may not, he doesn't claim to be gay, but that none of this actually happened. Not saying that it didn't happen, but there's substantial evidence to support that. So the very fact that Cameroon is not a hospitable country for gay individuals is not proof of anything. One other point that counsel raised was about the opportunity to explain himself, that the IJ did not give Mr. Fossil the opportunity to explain himself, the record shows that is not true. For instance, he was asked, Mr. Fossil was asked, how is it that you stated in your declaration that you were not beaten during your second detention, and yet you've just testified that you were, and Mr. Fossil's response to that was, did I say that? I don't think I said that. And there is evidence in the record to support that he just did not keep his story straight, which suggests that the story may have been fabricated. Unless the Court has any more questions, for these reasons, we request that the Court deny the petition for review. Thank you, Mr. Alexander. Just a couple of points. Again, the government's argument is focused on petitioner's inconsistencies, and again, just like that immigration judge did, and just like the agency did, they're ignoring all the other independent evidence. In fact, there was no discussion by the government about any of this unrefuted independent and reliable evidence that supports the petitioner's claims for relief. The judge clearly and the Board never discussed this independent evidence. It's totally unreasonable and illogical to say, just because the judge says, oh, I've considered all the evidence, and then only discuss a very small portion of the evidence, to fall back and say, oh, yeah, the judge considered all the evidence. That's, you know, conclusory statements are not sufficient, must be supported by the evidence. And the judge did not apply the correct standard in a couple of ways. The judge did not consider all of the evidence. But the BIA did. Actually, no, Your Honor, the Board did not either. The Board basically accepted the judge's conclusory statement that the judge had considered all the evidence. In fact, the Board even doubles the error by saying, well, there's no additional evidence. Well, there was additional evidence. It was never challenged by the government below. The judge never questioned about whether the petitioner was actually a gay rights organizer and involved in the movement. The testimony of his witness was never challenged. The testimony of the six witnesses' statements in the country reports were never challenged. And also, another way in that the judge did not apply the correct standard was, the judge didn't apply any independent evidence to determine whether the petitioner would qualify under the CAT. Again, the judge said, well, I find that the petitioner is not credible. Therefore, he doesn't have, he's not eligible for relief from the torture convention. That's totally inconsistent with this Court's rulings in Kamara, among other cases. Another, I wanted to mention the other case that this Court's aware of, I may mispronounce it, Jadju v. Holder, which Your Honor, Judge Floyd wrote the decision. That, as the Court held in that case, that an immigration judge and the Board must consider all evidence, including independent evidence, and that even if an individual, even if a petitioner is found to be not credible, and his testimony to be based on inconsistencies, that still the person can qualify for withholding. But in Martinez v. Holder, the Court held there's a presumption that the BIA considers all relevant evidence. Isn't that the holding there? We believe that it's clear on this record that the Board abused its discretion in finding that there was no additional evidence when, in fact, there was significant independent evidence. And I would just also just mention in passing, which centuries in government brings up about where the petitioner testified about brother versus cousin. And I think anyone who's had any exposure with anyone from Africa, among other countries, know that people call a person their brother because it may even be not even a relative. So I don't think that means much. So I would just go ahead and close early for a change, and thank you all. Thank you, Mr. Ritchie. The Court will take a recess and come down and recount. Thank you.
judges: Albert Diaz, Henry F. Floyd, Stephanie D. Thacker